AXELRAD, J.T.C.
This is a local property tax matter in which the taxpayer has challenged the property tax assessment on Block 27, Lot 50.01,. also known as 102 Old Driftway Lane, Tewksbury Township, Hunterdon County, New Jersey, for the 1998 tax year. The assessment was as follows:
Land $182,600
Improvements 419,300
Total $601,900
The taxpayer’s attorney filed an appeal with the Hunterdon County Board of Taxation, dated August 24, 1998. The petition and filing fee were returned along with a county board judgment of dismissal which was entered on September 9, 1998, indicating Judgment Code “5E” (“appeal not timely filed”), and a cover letter dated September 11,1998 from the county board tax administrator referencing N.J.A.C. 18:12A-1.20, which prohibits the county board from accepting a petition received after April 1 of the tax year. The taxpayer.then filed this complaint to the Tax Court on October 22,1998.
The taxpayer purchased the subject property on or about September 26, 1997. At that time the tax assessment for the subject property was $492,100 as set forth on the third and fourth quarter 1997 tax bills. According to the certification of the tax assessor, he received a copy of the deed indicating the sale to taxpayer in “late September or early October 1997[and] did not immediately change the ownership listing after receipt of this deed due to the fact that the computer program advised [him] that this property should be field investigated due to the fact that the assessment to sales ratio was under 85%.” As of January 1998 his assessor’s field book still had the prior owners, Victoria and *307 Donald Tourville, listed as owners of the subject property, even though the property was actually owned by the taxpayer at that time. The assessor did not actually change the ownership information of the property on the municipal tax list until sometime in January of 1999.
Although the property had been assessed at $492,100 for the 1997 tax year, the assessor set the assessment at $601,900 for the 1998 year, prior to certifying and sending the 1998 assessment is to the county in January 1998. According to the assessor’s certification, Vital Computer Services (“Vital”), a company under contract with the Division of Taxation and the county board of taxation, sends out notices of the current assessment to each taxpayer in the municipality at the request of the Hunterdon County Board of Taxation, pursuant to N.J.S.A. 54:4-38.1 (“Chapter 75 notices”). The statement from the Hunterdon County Board of Taxation Administrator submitted by the municipality’s counsel indicates that on January 30, 1998, Vital sent out a bulk mailing of 2,803 pieces for the municipality, which presumably were the Chapter 75 notices. Counsel for the municipality advised the court that a representative of Vital informed her that Vital no longer had a listing of all the individuals to whom these notices were sent. The municipality submits that a notice was sent to the correct address but with the previous owner’s name, not Mrs. Centorino’s. The assessor certified that if any of the old notices are undeliverable, they are returned to the Hunterdon County Board of Taxation and placed in a folder for Tewskbury Township, that he checks the folder at least once a week, and that the subject postcard was not returned.
The taxpayer certified that she did not receive the Chapter 75 notice and the first and only notification that she received that her assessment was higher for the 1998 tax year was a tax bill for 1998/1999 that was received by her on or after August 1, 1998, indicating that the assessed value of the property had been increased from $492,100 for 1997, to $601,900 for 1998. The taxpayer further certified that when she and her husband contacted the assessor immediately thereafter, the assessor told her that *308 the assessment was changed “because the assessor had concluded that there had been a mistake in the assessment for 1998, and for several years before that.”
On August 24,1998, the taxpayer’s counsel filed an appeal of the 1998 assessment to the county board with a letter indicating:
I recognize this appeal is being filed subsequent to April 1, 1998. It is my clients [sic] position that the assessment was changed and that the only notice of the change received by my client was his receipt of the tax bill within the past 45 days. You will note that N.J.S.A. 54:3-21 provides that ‘a taxpayer shall have 45 days to file an appeal upon the issuance of a notification of a change in assessment.’ Since my client first received a notification of the change of assessment within the past 45 days, we believe the Petition of Appeal is timely. We substantially alledge [sic] ‘Spot Assessment.’
As previously stated, the appeal was rejected as untimely filed and a complaint was filed with this court.
On April 7, 1999, the municipality’s attorney filed a notice of motion for summary judgment to dismiss the taxpayer’s complaint for untimely filing pursuant to N.J.S.A. 54:3-21, which requires an appeal to the county tax board to be filed no later than April 1 of the tax year. The municipality initially, for purposes of the motion only, conceded a failure to mail the Chapter 75 notice, but after inquiry by the court and further investigation rescinded that concession and supplied additional information to support its claim that notice was sent to the correct address, but to the previous owner, not the taxpayer. Furthermore, the municipality submits that although N.J.S.A. 54:3-21.4 permits the county board to extend the time for appeal beyond April 1 whenever an assessor fails to mail a Chapter 75 notice, at the time of the filing of the motion the taxpayer had made no written application requesting an extension of time to appeal. Even if the taxpayer had done so, the municipality submits that N.J.S.A. 54:3-21.5 provides that “reasonable extensions” may be granted up to a maximum of thirty days from the date otherwise provided by law. Therefore, since an extension could only have been made pursuant to the statute from the April 1 filing deadline to May 1, and the taxpayer did not file its petition of appeal until August 24, the municipality submits that the court lacks jurisdiction to hear this matter.
*309 By letter dated April 21, 1999, triggered by the municipality’s motion to dismiss, the taxpayer’s attorney sent a formal request to the county board and Division to nunc pro tunc extend the filing deadline for forty five days from the date of mailing of the August 1, 1998 tax bills. The municipality opposed the request on the basis that there was no authority for a nunc pro tunc application for extension and that the April 1999 request was untimely. Alternatively, it submitted that the Director did not have the authority to grant an extension past May 1,1998. By letter dated June 11, 1999, the Assistant Director, Division of Taxation advised the taxpayer’s counsel in writing that “inasmuch as the appeal is currently pending before the Tax Court, and not before the Hunterdon County Board of Taxation, there is no basis for granting” taxpayer’s request for an extension of the 1998 deadline for filing a tax appeal to the county board.
The taxpayer’s attorney submits that even if the court accepts as a fact that the Chapter 75 post card relative to this property was sent out by Vital in January 1998, the assessor admitted that it was not properly addressed to the current taxpayer even though he had actual knowledge of the deed. B’urthermore, the taxpayer certified that she did not receive the notice and was unaware that her assessment had been increased from the prior year until she received a tax bill in August of 1998. The taxpayer contends that the tax bill constituted a “notice of change of assessment” which entitled her to file an appeal within forty five days of receipt pursuant to N.J.S.A. 54:3-21; therefore, her appeal to the county board was timely. The taxpayer further submits that her counsel’s August 24,1998 letter to the county board, accompanying her petition of appeal, which acknowledged the late filing and provided an explanation for the delay, constitutes notice of a request for an extension. Even if it does not, the taxpayer contends that N.J.S.A. 54:3-21.4 imposes no deadline on the request so that she is not penalized for waiting until April, 1999 before making a formal request to the county board and Director. Moreover, the taxpayer claims that N.J.S.A. 54:3-21.5 allows the Director to “approve reasonable extensions of time” to “an aggrieved taxpayer ” and that extensions beyond thirty days have been allowed by *310 county boards in the past, although no examples were cited by counsel. As such, the taxpayer submits that multiple extensions of thirty day units could be granted to allow the board to accept and' heai* her appeal. Overall, the taxpayer submits that the principles of equity and due process should be utilized by the court to extend the filing deadline, extend the time period upon which the county board can act on a 1998 appeal, and direct the county board to accept and act on the taxpayer’s petition, or take jurisdiction itself over the appeal and rule on the merits.
In order to determine whether the 1998 appeal was timely, the court must address the following issues: (1) did the taxpayer receive her Chapter 75 notice pursuant to N.J.S.A. 54:4-38.1? (2) if not, did the tax bill constitute a “notification of a change in assessment” which would extend the filing deadline for forty five days from its issuance pursuant to N.J.S.A. 54:3-21? (3) did the county board have the authority to otherwise extend the time for filing the 1998 appeal because of the failure of the assessor to mail a notification of assessment pursuant to N.J.S.A. 54:3-21.4 and - 21.5? and (4)' do the principles of due process and equity necessitate a relaxation of the filing deadline under the facts of this case?

A. Receipt of the Chapter 75 Notice

The court finds that the taxpayer did not receive her notice of the 1998 assessment and preceding year’s taxes in accordance with N.J.S.A. 54:4-38.1. Prior to March 28,1991, the effective date of N.J.S.A. 54:4-38.1, assessment notices were not part of New Jersey local property tax law. Instead, in June of each year’ the tax collector merely sent out tax bills which reflected the assessment. In 1991 the Legislature enacted L. 1991, c. 75, which permitted municipalities to adopt the state fiscal year to facilitate financial planning, and since tax appeals are legally an appeal of a' tax assessment and not of a tax bill, changed the filing date for tax appeals beginning in 1992, to April 1 of each year, instead of August 15, after tax bills are received. “In order to continue the practice that property taxpayers are made aware of their assessment and changes each year” and to provide ample notice for *311 taxpayers to preserve their appeals rights, the Legislature added the requirement that “[e]very assessor, prior to February 1, shall notify by mail each taxpayer of the current assessment and preceding year’s taxes. Thereafter, the assessor or county board of taxation shall notify each taxpayer by mail within 30 days of any change to the assessment.” L. 1991, a 75, § 32, eff. March 28, 1991 (N.J.S.A. 54:4-38.1) (emphasis added), Assembly Municipal Government Committee, Statement to Assembly Bill No. 4425 (January 30, 1991). The purpose of this amendment was to advise a homeowner of the assessment for the respective tax year prior to the April 1 filing deadline since tax bills would not reflect the current year’s assessment until the third quarter (August) bill. Although the tax rate for the year would not be struck until after the filing deadline, a homeowner could make an educated guess based upon the prior year’s tax rate and the current assessment as to the amount of the taxes. The Legislature felt this was an important enough notice to make it a mandatory requirement (“[E]very assessor ... shall notify by mail each taxpayer----”). N.J.S.A. 54:4-38.1.
 The municipality admits that the assessor had actual knowledge of the taxpayer’s purchase of the subject property prior to the certification of his tax assessment list to the county in January, 1998, that he did not change his records until approximately one year later, and as a result, the Chapter 75 notice was mailed to the wrong person. A notice so mailed does not create a presumption that the notice was received. SSI Medical Services, Inc. v. State, Department of Human Services, 146 N.J. 614, 621, 685 A.2d 1 (1996) (stating that one of the conditions necessary to invoke “the presumption that mail properly addressed, stamped and posted was received by the party to whom it was addressed” is that “the mailing was correctly addressed”). The fact that the improperly addressed card was not returned to the county board is insufficient to establish that it was received by the taxpayer — it could have been forwarded to the prior owner to whom it was addressed — particularly in light of the taxpayer’s certification that *312 she did not receive the notice and her prompt action upon receiving the tax bill in August 1998.

B. Notification of a “Change in Assessment”

The taxpayer acknowledges that, by filing her complaint with the county board on August 24, 1998, she missed the April 1, 1998 filing deadline for contesting the 1998 assessment for the subject property. Despite this fact, the taxpayer submits that, pursuant to the 1991 amendment to N.J.S.A 54:3-21 which provided that a “taxpayer shall have 45 days to file an appeal upon the issuance of a notification of a change in assessment,” her appeal to the county board was timely. L. 1991, c. 75, § 28.
In order to deal with the taxpayer’s contention on this point, it is necessary to review the statutory requirements relating to the reporting of an assessment by the assessor and by the county board of taxation:
1) N.J.S.A. 54:4-23 requires that the assessor assess all property as of October 1 of the pretax year.
2) N.J.S.A. 54:4-35 requires that the assessor complete the preparation of the municipal assessment list and file the list with the county board by January 10 of the tax year.
3) N.J.S.A 54:4-46 provides that once the list is filed with the county board, it may revise and correct the list, and the assessor shall prepare a corrected tax list under the direction and supervision of the board. The assessor is to be present during this process but the taxpayer is not present.
4) N.J.S.A. 54:4-52 provides that the county board shall on or before May 20, complete the preparation of its table of aggregates from the lists of the various assessors of the county.
5) N.J.S.A. 54:4-55 requires that the county board deliver the corrected, revised and completed duplicates of the lists of assessments to the tax collector of each municipality on or before June 3.
In accordance with these statutory provisions, the county board may change, in its administrative oversight capacity, an assess *313 ment upon the request of the assessor or on its own decision, with the assessor present but without any input from the taxpayer. Any such change is concluded by May 20 of the tax year. This type of administrative change, which occurs without the taxpayer’s knowledge, after, in most instances, her receipt of the Chapter 75 notice of the current assessment which the assessor had set in his municipal tax list, is the type of change contemplated by the provisions of N.J.S.A. 54:4-38.1. This statute provides that the “assessor or county board of taxation shall notify each taxpayer by mail within 30 days of any change to the assessment.” As this revision by the county board often occurs after the April 1 filing deadline, the taxpayer’s rights would be violated if she were precluded from filing an appeal of an increased assessment of which she had no knowledge, and, in fact, was not even on the books as of the filing deadline. As such, under the same 1991 law that created the assessment notice requirements, the Legislature amended N.J.S.A. 54:3-21 and provided an exception to the mandatory April 1 filing deadline.
In the present case, however, the assessment established by the assessor as of October 1, 1997 and filed with the county board by January 10,1998, was not changed by the county board. The only change which occurred is from one year to another as a result of the assessor’s analysis. The 1998 assessment is simply a higher assessment than that of prior year. Each assessment is for a separate tax year; therefore, there was no “change of assessment” for the 1998 tax year within the meaning of N.J.S.A. 54:4-38.1. As such, N.J.S.A. 54:3-21 is not applicable to this case and there is no reason to address whether the August 1998 tax bill would constitute a “notification of a change in assessment” which would extend the filing deadline under N.J.S.A. 54:3-21.

C. Extension of Time to File a County Board Appeal

The taxpayer asserts that the county board had the authority to extend the time to file her appeal because of the assessor’s failure to mail the Chapter 75 notice and should have accepted her petition in August 1998 as timely filed. N.J.S.A. 54:3-21.4, as *314 amended in connection with the enactment of the notice provisions of N.J.S .A. 54:4-38.1, provides:
Notwithstanding the provisions of any law, rule or regulation to the contrary, a county board of taxation may, upon the written application of the taxpayer and the approval of the Director of the Division of Taxation, whenever a local assessor fails, for any reason, to mail or otherwise deliver a notification of assessment or change in assessment extend the time for appeal provided in R.S. 54:3-21 for any taxpayer feeling aggrieved by the assessed valuation of his property ...
[L. 1991, c. 75, § 29. (emphasis added) ] [1]
Even though the taxpayer’s attorney did not send a “formal” notice to the county board, with a copy to the Director of the Division of Taxation, until this motion, was filed, the court finds that the August 24, 1998 letter from the taxpayer’s attorney to the county board should be construed as a “written application” for an extension of the time to appeal. It expressly indicated that the attorney was aware the petition was being filed after the April 1 statutory deadline, that his client’s first notice of the “change in assessment” was receipt of the recent tax bill, and his belief that the petition was timely because it was filed within forty five days thereof under the 1991 amendment to N.J.S.A. 54:3-21. Moreover, N.J.S.A. 54:3-21.4 does not expressly require the taxpayer to notify the Director of her request. The court’s finding, that the-applicable notice provision of N.J.S.A. 54:4-38.1 involves the “current assessment and preceding year’s taxes” rather than the “change to assessment” and the inapplicability of the amendment to N.J.S.A. 54:3-21, does not detract from the taxpayer’s implicit request to the county board for relief from the filing deadline because of the assessor’s failure to mail the statutory notice.
The municipality submits that the Director wms not authorized to approve an extension beyond May 1, 1998 under N.J.S.A. 54:3-21.5 which provides, in relevant part:
The Director of the Division of Taxation is hereby empowered to approve reasonable extensions of time for appeal by an aggrieved taxpayer to a county *315 board of taxation in any instance within the purview of section 1 of this act [N.J.S.A. 54.3-21.41; provided, however, that no such extension shall be for more than 30 days from the date otherwise provided by law.
Under the municipality’s interpretation, even though the assessor failed to fulfill his statutory obligation because of his failure to change his records and the homeowner did nothing wrong and, even as of May 1 had not received a notice and would have had no reason to believe her assessment had been significantly increased from the prior year, she would be precluded from filing an appeal to the county board. To read these statutes in such a manner would thwart the policy reason behind the enactment of the mandatory notice requirement and produce an illogical and inequitable result.
The court finds that N.J.S.A. 54:3-21.5 does not apply to N.J.S.A. 54:3-21.4, as amended in 1991. It is important to note that -21.5 was enacted in 1973 and has never been amended. In 1973 N.J.S.A 54:3-21.4 did not provide for an extension as a result of the assessor’s failure to mail the February 1 assessment notice or a notification of change in assessment since the notification requirement mandated by N.J.S.A. 54:4-38.1 was not in existence. At that time the filing deadline was August 15 of the tax year and -21.4 only allowed for an extension when there was a failure to deliver a tax bill prior to July 15, i.e. a late bulk mailing of the tax bills. As such, the Director could approve reasonable extensions of the filing deadline, the length presumably depending upon when the tax bills were mailed, up to September 15.
The court finds that the county board had the authority under N.J.S.A 54:3-21.4 to extend the time for the taxpayer’s filing of her 1998 appeal because of the failure of the assessor to comply with the statutory mandate of N.J.S.A. 54:4-38.1 and mail a notification of the 1998 assessment to the taxpayer. The court can look for guidance to the amendment to N.J.S.A. 54:3-21 and conclude that forty five days would be a “reasonable” period for such extension. The first notice of the 1998 property tax assessment for the subject property which the taxpayer received was the tax bill on or about August 1, 1998 and she acted promptly in *316 contacting the assessor and well within the forty five day period in filing her appeal to the county board.
The county board responded to the taxpayer’s request on September 11, 1998 with a Judgment of Dismissal for untimely filing and the return of the petition of appeal and filing fee pursuant to N.J.A.C. 18:12A-1.20. Although the county board had the authority to extend .he filing deadline, it did not have the jurisdiction to set a date and hear and determine the appeal, because August 24, 1998 was outside of the statutory period for the county board to act pursuant to N.J.S.A. 54:3-26[2] and it had not obtained an extension pursuant to -26.1. Under the facts of this ease, the principles of due process and equity necessitate a relaxation of the filing deadline and the right of the taxpayer to obtain an adjudication of her appeal on the merits by this court.
 “The critical components of due process are adequate notice, opportunity for a fair hearing and availability of appropriate review.” Schneider v. City of E. Orange, 196 N.J.Super. 587, 595, 483 A.2d 839 (App.Div.1984), aff’d., 103 N.J. 115, 510 A.2d 1118, cert. denied, 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986). What constitutes adequate notice depends, to some degree, on the “practicalities and peculiarities” of the particular case at issue. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657 94 L.Ed. 865 (1950); Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 484, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988).
In Brick Tp. v. Block 48-7, Lots 34, 35, 36, 202 N.J.Super. 246, 247-48, 494 A.2d 829 (App.Div.1985), the municipality mailed its tax foreclosure complaint to the property owners at them address as it appeared on the municipal tax duplicate, which address was incorrect as the owmers had previously moved them office but had not informed the assessor or collector of the move. The complaint was returned with the notation that the post office was unable to *317 forward, the envelope was undeliverable as addressed, and that a forwarding order had expired. The municipality made no effort to locate the new address and the complaint was never served upon the property owners. The Appellate Division held that:
Due process does not require tax collectors, municipalities and their staffs to examine the tax rolls to search for outdated or incorrect addresses supplied by property owers, or to communicate with property owners to ascertain whether their addresses remain correct. A local professional or business person can not expect more.
The New Jersey Supreme Court has clearly ruled that municipalities are not constitutionally required to search out taxpayers in foreclosure suits to see if they have furnished up-to-date addresses.
[Id. at 252, 494 A.2d 829].
The court recognized, however, that “[I]t is something else altogether if someone involved ignored conscious awareness that the address was outdated” which would justify relief from the judgment. Id. at 254, 494 A 2d 829. After a remand to the trial court and factual determination as to whether the municipality had actual knowledge of the change of address, the Appellate Division held that the municipality’s knowledge of the invalidity of the old address was sufficient to obligate the municipality to find the new address. Brick Tp. v. Block 48-7, Lots 34, 35, 36, 210 N.J.Super. 481, 484-85, 510 A.2d 101 (App.Div.1986), certif. denied, 107 N.J. 67, 526 A.2d 151 (1986), cert. denied, 481 U.S. 1049, 107 S.Ct. 2181, 95 L.Ed.2d 838 (1987).
In Berkeley Tp. v. Berkeley Shore Water Co., 213 N.J.Super. 524, 533-34, 517 A.2d 1199 (App.Div.1986), another in rem foreclosure action, the court held that where a taxpayer made reasonable efforts to notify the municipality of the correct address, the burden shifts to the taxing authority to change its records to reflect the new address. The municipality’s failure to correct its records and the sending of the foreclosure complaint to the old address resulted in a denial of due process.
Judge Kuskin applied these holdings in a tax appeal proceeding and determined that “[njotice mailed by a county board of taxation to an addi'ess different in a significant respect from that specified in a written notification from a petitioner does not (unless re *318 ceived) constitute adequate notice and does not satisfy the'requirements of due process.” Family Realty Co. v. Secaucus, 16 N.J. Tax 185, 193 (1996). The pertinent facts of that case are as follows: the taxpayer’s petition of appeal to the county board designated its signer as the “Attorney — or person to be notified of heai'ing and judgment.” When the taxpayer telephoned the county board to inquire about the status of the appeal, he was advised that the hearing had been scheduled, no one had appeared, and it had been ádjourned. He indicated his concern that a letter addressed to him, without the name of his company, might not be delivered by a substitute for the regular mail carrier since the office building’s tenant directory sign only included the name of the company and not his individual name. The Petitioner confirmed his conversation in wilting by telefax, which was received by the board, requesting that any future notices of hearing date be forwarded to his attention “c/o [his company specifically named].” A hearing was set four months later, with' approximately three weeks’ notice provided to the petitioner. When the petitioner did not appear at the hearing, the county board granted a motion by the municipality to dismiss for failure to prosecute. The county board judgment, which was received by the petitioner, was incorrectly addressed to him personally, without any designation of the company’s name. The Tax Court found that the omission from the hearing notice of the name of the petitioner’s company was “a significant departure from the instructions received by the comity board” and concluded that the improperly addressed notice was not received, so that the taxpayer should not be denied the opportunity for a hearing on its appeal, and denied the municipality’s motion to dismiss. JcL at 194.
In the case of City of Camden v. Camden Masonic Ass’n, 9 N.J.Tax 331 (1987), aff’d, 11 N.J.Tax 88 (App.Div.1989) Judge Lario also applied due process principles where a municipality’s employees failed to comply with statutory notice requirements and he fashioned a remedy that was not provided for in the statute. He held that the failure of the tax assessor and collector to comply with the notice requirements of the alternate method for omitted *319 assessment statute [3] and failure to provide a subsequent notice of the regular assessment or resulting tax bill, where the owner had no knowledge of the assessments and did not have the opportunity to timely appeal them in accordance with the statutes, necessitated an extension of the filing deadlines for a reasonable period of time.
In the present case, the assessor conceded that he had actual knowledge of the taxpayer’s purchase of the subject property prior to the certification of his tax assessment list to the county, that he did not change his records until approximately one year later, and as a result, the mandatory notice of assessment was incorrectly mailed to the taxpayer’s predecessor in title. This court concluded that the taxpayer did not receive this notice and was unaware that her 1998 assessment was set at $601,900 until she received her tax bill in early August 1998. Upon receipt of the bill she took prompt action in contacting the assessor and filing an appeal to the county board. There is no evidence that the taxpayer had any indication that her 1998 assessment would be significantly higher than it was the previous year.
Inherent in local property tax law is the principle espoused by our Supreme Court that “[i]n dealing with the public, government must ‘turn square corners.’” F.M.C. Stores Co. V. Borough of Morris Plains, 100 N.J. 418, 426, 495 A.2d 1313 (1985). *320 In balancing the equities, the fault was clearly on the part of the municipality while the taxpayer did nothing wrong. As a result of the assessor’s failure to correct his tax assessment list prior to the issuance of the Chapter 75 notices even though he had actual knowledge of the purchase, the taxpayer did not timely receive a notice of her 1998 assessment, which the Legislature felt was important enough to mandate by statute. Consequently, she did not file an appeal by April 1,1998.
Under these unique facts and circumstances, the principles of due process necessitate the extension of the filing deadline so that the taxpayer is not denied access to the court and the opportunity for a hearing on her appeal. Accordingly, the court denies the municipality’s motion to dismiss the taxpayer’s complaint with prejudice for untimely filing, and will schedule the matter for trial.

 This is a different statute than N.J.S.A. 54:3-26.1, which permits the Tax Court to extend the lime for the county board to hear and determine appeals past the time prescribed in N.J.S.A. 54:3-26, pursuant to application by the county board.

 Under N.J.S.A. 54:3-26 county boards of taxation ordinarily have only a limited three month time period following the April 1 filing deadline within which to hear and determine tax appeals.

 N.J.S.A. 54:4-63.35 provides that “[a]s soon as the certified copy of the omitted assessment list is received by the assessor from the county board the assessor shall cause a notice to be sent by certified mail to the owner of each of the properties affected stating that an omitted tax assessment has been made as to the taxpayer's property and that the tax payable as a result thereof may be ascertained from the collector of taxes of the taxing district."
N J S A 54:4-63.36 provides that *'[a]s soon as the omitted assessment duplicate is delivered to the collector of the taxing district, he shall at once begin the work of preparing, completing, mailing or otherwise delivering the tax bills therefor to the owners whose property has been assessed as omitted assessments .... The validity of any omitted tax or assessment . shall not be affected by the failure of a taxpayer to receive a tax bill, but every taxpayer to whom a notice of an omitted assessment has been sent in accordance with [N J.S.A 54:4-63.35] is put upon notice to ascertain from the collector of taxes of the taxing district the amount which may be due for taxes or assessments against him or his property for omitted assessments."